# SIVE | PAGET | RIESEL

**ELIZABETH KNAUER**
DIRECT DIAL: 646.378.7272
EKNAUER@SPRLAW.COM

February 8, 2024

**VIA ECF ONLY**
Judge Diane Gujarati
United States District Court for the Eastern District of New York
225 Cadman Plaza East, Courtroom 4B South
Brooklyn, NY 11201

Re: *Mulgrew, et al. v. U.S. Dep't of Transp. et al.*, Case No. 24-cv-00081 (DG) (JAM)

Dear Judge Gujarati,

Counsel for Defendants the Metropolitan Transportation Authority (the "MTA") and the Triborough Bridge and Tunnel Authority ("TBTA" and, collectively, "MTA/TBTA") write pursuant to your Individual Practice Rule III.A.1, seeking Court approval to file a motion under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' Amended Complaint, ECF No. 19 (the "Compl.") challenging the Central Business District Tolling Program (the "Project"). In sum, Plaintiffs' first cause of action under the National Environmental Policy Act ("NEPA") fails to state a claim because it is time-barred; Plaintiffs' remaining claims are unripe because they depend on agency decisions yet to be made and are otherwise meritless as a matter of law. MTA/TBTA, joined by defendants New York State Department of Transportation ("NYSDOT") and New York City Department of Transportation ("NYCDOT") will also shortly file a motion to transfer this action to the Southern District of New York ("SDNY"), before which two cases challenging the Project are pending, including one case in which the plaintiffs are represented by the same counsel as Plaintiffs in this action.[1] MTA/TBTA respectfully request that the Court grant the motion to transfer venue or, alternatively, permit MTA/TBTA to file their Rule 12 motion. If the case is transferred, MTA/TBTA would file the same Rule 12 motion in the transferee court. However, if, pursuant to Individual Practice Rule III.A.4, this Court were to rule on the proposed Rule 12 motion, the motion to transfer may be obviated.

**I.    Background**

On April 1, 2019, the New York State Legislature enacted the MTA Reform and Traffic Mobility Act (the "Traffic Mobility Act") with the goal of reducing traffic congestion in the Manhattan Central Business District (the "CBD") and creating a dedicated funding source for the MTA's capital needs. The legislature recognized that congestion in New York City results in a significant cost to the region's economy and degrades air quality, and that the MTA's funding shortfalls have harmful health, safety, and economic distributive effects in the metropolitan region. N.Y. Veh. & Traf. Law § 1701.

In June 2019, the Project Sponsors (TBTA, NYSDOT, and NYCDOT) submitted an Expression of Interest for tolling authority under the Federal Highway Administration's ("FHWA's") Value Pricing Pilot Program (the "VPPP"). This submission required FHWA to evaluate the potential effects of the proposal in accordance with NEPA, and triggered what became a four-year environmental review process. In March 2021, FHWA determined that the Project would require an Environmental Assessment ("EA") to determine whether it could have a significant impact on the environment, thereby requiring an

---

[1] Those cases are *Chan et al. v. United States Department of Transportation et al.*, 23-cv-10365 (LJL), and *New Yorkers Against Congestion Pricing Tax et al. v. United States Department of Transportation et al.*, 24-cv-367 (LJL).

environmental impact statement.

FHWA and the Project Sponsors diligently solicited agency and public input in the NEPA process, inviting participation from multiple federal, state and regional agencies, and providing an extraordinary amount of public outreach to the general public. A Draft EA was issued on August 10, 2022, for public review and comment. Because the exact tolling structure has not yet been determined, the Draft EA included seven different tolling scenarios to evaluate the full range of potential impacts of the Project. The Draft EA also identified mitigation measures to which the Project Sponsors have committed.

FHWA and the Project Sponsors issued a Final EA on May 12, 2023. The Final EA included additional analyses of potential impacts, and committed the Project Sponsors, *inter alia*, to implement a robust, $155 million, five-year mitigation package to improve air quality and public health in environmental justice communities that could experience increased traffic as a result of the Project. Based on the Final EA, FHWA issued a Draft Finding of No Significant Impact ("FONSI"), which was made available for public review for an additional 30 days. Finally, on June 23, FHWA's New York Division Administrator signed the FONSI, memorializing FHWA's conclusion that after accounting for mitigation and project enhancements, the Project would not result in any significant adverse impacts. On June 28, 2023, FHWA published a Federal Register notice of the FONSI's issuance. This notice stated that pursuant to 23 U.S.C. § 139(l)(1), "[a] claim seeking judicial review of the Federal agency actions on the highway project will be barred unless the claim is filed on or before November 27, 2023." 88 FR 41998-01.

On November 30, 2023, the Traffic Mobility Review Board (the "TMRB") (an independent body created by the Traffic Mobility Act) issued a report recommending a tolling structure to TBTA's Board Members, as directed by the Act. The TBTA Board thereafter voted to authorize TBTA to issue a notice of proposed ratemaking proposing adoption of the TMRB's recommended structure, and this notice was published on December 27, 2023. However, several contingent steps remain before a final tolling structure may be adopted and take effect. First, the recommended tolling structure is subject to requirements under the New York State Administrative Procedure Act ("SAPA"), including a public comment period through March 11, 2024 and four public hearings. Second, the TBTA Board must vote to adopt the proposed tolling structure or adopt a modified or different structure. Third, consistent with FHWA's regulations, the FONSI committed FHWA to reevaluating the final tolling structure prior to any federal approval, to determine whether the FONSI remains valid. 23 C.F.R. § 771.129. Finally, subject to any further environmental review the reevaluation may deem warranted, the Project Sponsors and FHWA must execute an agreement authorizing tolling under the VPPP.

### II.     Plaintiff's First Cause of Action Challenging the Environmental Review Is Untimely

Plaintiffs' first cause of action challenges the adequacy of the EA and FONSI. Compl. ¶¶ 145–51. Under 23 U.S.C. § 139(l)(1), Plaintiffs were required to file a claim seeking judicial review of the EA and FONSI "within 150 days after publication of a notice in the Federal Register"—in other words, by November 27, 2023. Plaintiffs did not file this action until January 4, 2024. Accordingly, Plaintiffs' first cause of action is time-barred. *See Yorkshire Towers Co., L.P. v. U.S. Dep't of Transp.*, No. 11 Civ. 1058, 2011 WL 6003959, at *5-7 (S.D.N.Y. Dec. 1, 2011).

### III.    Plaintiffs' Remaining Claims Must Be Dismissed as Unripe and Meritless

Whereas Plaintiffs' primary environmental review claim is untimely, their remaining claims are unripe because they "rest upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

      a.   <u>Alleged Violation of NEPA for Failing to Supplement</u>

Plaintiffs' second cause of action purporting to challenge the adequacy of a yet-to-be performed reevaluation is not ripe. Compl. ¶¶ 152–60. Plaintiffs acknowledge that the TMRB's proposal is not final, but simply a "recommendation" to the TBTA Board. As explained above, the FONSI committed FHWA to reevaluate whatever tolling structure may ultimately be adopted to determine if the decision made in the FONSI remains valid. 23 C.F.R. § 771.129.

Section 706(1) of the Administrative Procedure Act authorizes courts only to "compel agency action unlawfully withheld or unreasonably delayed"; *i.e.*, when an agency has failed to complete an action that it is required to take. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004). Because FHWA has not failed to conduct a reevaluation, but in fact committed in the FONSI that it would do so upon TBTA's adoption of a final tolling structure, Plaintiffs' claim is not yet ripe. *Nevada v. Dep't of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006) (holding demand to supplement an EIS was unripe where "uncertainty makes it plainly premature for us to review an interim transportation plan that may never materialize").

      b.   <u>Alleged Violation of the Dormant Commerce Clause and Right to Travel</u>

Plaintiffs' third and fourth causes of action assert purported constitutional claims challenging a proposed tolling structure that has not yet been adopted or authorized. Compl. ¶¶ 161–75. However, as described above, it is a matter of public record that multiple steps remain before any tolling structure can be finalized. "A claim is not ripe for adjudication if it rests upon contingent events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300. Plaintiffs' federal constitutional claims rest on the precise contours of a recommended tolling structure that will not be implemented until several contingent future events occur (which steps could change the very contours that allegedly give rise to Plaintiffs' claims). Therefore, these claims are also unripe.

Even if Plaintiffs' federal constitutional claims were ripe, they would fail as a matter of law. Plaintiffs' Dormant Commerce Clause claim plainly fails because the Project neither discriminates against interstate commerce nor impermissibly burdens such commerce. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023); *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009). And Plaintiffs' Right to Travel claim likewise fails under governing precedent. *See, e.g.*, *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 257–60 (2d Cir. 2013); *Janes v. Triborough Bridge and Tunnel Auth.*, 774 F.3d 1052, 1054–55 (2d. Cir. 2014).

      c.   <u>Alleged Violation of the New York State Green Amendment</u>

Plaintiffs' fifth cause of action claims that MTA/TBTA violated the New York State Constitution's newly enacted "Green Amendment," which provides New Yorkers the right to "clean air and water, and a healthful environment." N.Y. Const., Art. 1, Sec. 19; Compl. ¶¶ 176–84. This claim is similarly unripe because no interference with the environment could occur until tolling is implemented.[2]

In sum, Plaintiffs' claims are either indisputably time barred or rely on multiple contingent events that have not come to pass and are otherwise meritless. The Complaint should be dismissed in its entirety.[3]

---

[2] The Court also should decline to exercise supplemental jurisdiction over this claim, as it involves "novel [and] complex issues of State law" and because all of Plaintiffs' federal claims should be dismissed. 28 U.S.C. § 1367(c); *Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Town of Babylon v. James*, No. 22 Civ. 1681, 2023 WL 8734201, at *11 (E.D.N.Y. Dec. 19, 2023).

[3] MTA/TBTA do not waive other potential defenses to Plaintiffs' claims. For example, a number of the Plaintiffs lack standing to bring some or all of the claims alleged. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009); *Raines v. Byrd*, 521 U.S. 811, 820–30 (1997).

February 8, 2024
Page 4 of 4

        Respectfully submitted,

        <u>/s/Elizabeth Knauer</u>
        Elizabeth Knauer
        Mark A. Chertok
        SIVE, PAGET & RIESEL, P.C.
        560 Lexington Ave.
        New York, New York 10022
        (646) 378-7272
        eknauer@sprlaw.com
        mchertok@sprlaw.com

            and

        Roberta A. Kaplan
        KAPLAN HECKER & FINK LLP
        350 Fifth Avenue, 63rd Floor
        New York, New York 10118


        *Counsel for Defendants*
        *Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority*
.